IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) ) | **ORDER ON PRETRIAL MOTIONS** |
| vs. | ) ) | |
| Gabriel Martinez; Alan Michael Wessels; Martin Carrillo; Ramon Hernandez Martinez, a/k/a Razor; and Ramon Reyes, Jr.; | ) ) ) ) | Criminal Case Nos. 3:06-cr-14-17; -18; -19; |
| Defendants. | ) ) | -23; -28; |
| United States of America, | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 3:06-cr-45-01; |
| Ramon Hernandez Martinez, a/k/a Razor, | ) ) | |
| Defendant. | ) ) | |
| United States of America, | ) ) | |
| Plaintiff, | ) ) | 3:07-cr-10-04; and |
| vs. | ) ) | |
| Derek Alan Carlson, a/k/a Dirk, | ) ) | |
| Defendant. | ) ) | |
| United States of America, | ) ) | |
| Plaintiff, | ) ) | 3:07-cr-94 |
| vs. | ) ) | |
| Jose Lupercio, et al., | ) ) ) | |
| Defendants. | ) | |

Before the Court are numerous pretrial motions filed by Defendants Gabriel Martinez and

Ramon Hernandez Martinez. The United States has filed responses to each of these motions.

1

Because the Court's Order with regard to several of these motions will affect all defendants set for trial in this matter, the Order has been filed in each of the consolidated cases.

The Court notes that this Order does not decide all of the pending pretrial motions in this case. In particular, the Order does not address the following motions: Motion to Transfer Trial to the Appropriate Alternative Venue of the District of Minnesota (Doc. #799), Motion to Dismiss Counts 15 and 16 for Improper Venue (Doc. #801), Motions to Sever the Escape Counts from the Trial (Docs. #785, #787), Motion to Sever Ramon Martinez from the Trial (Docs. #813, #83), Motion to Sever Ramon Reyes, Jr., from the Trial (Doc. #886), and Motion to Strike Alias (Docs. #812, #82). The Court expects that all parties will be prepared to state their positions with regard to these pending motions at the status conference on February 13, 2008.

## I. Motion for an Order Requiring Disclosure of Whether the Government Intends to Employ a Jury Consultant

Defendant Gabriel Martinez has filed a motion requesting that the United States be required to disclose whether it intends to employ a jury consultant in this case (Doc. #797). The United States does not oppose the motion (Doc. #820). The United States has informed the Court and the parties that it has no current intention to employ a jury consultant in this case. Therefore, to the extent that Defendant has already been informed of the United States' intentions in this regard, the motion is **MOOT**.

Defendant has also requested that the Court impose a continuing duty on the United States to make immediate disclosure if it intends to employ a jury consultant in the future. The Court concludes it is appropriate to require disclosure from all parties in this case who wish to employ a jury consultant. The Court hereby **ORDERS** that any party who wishes to employ a jury consultant

in this matter must obtain the prior permission of the Court. Any party seeking the Court's permission to employ a jury consultant must make the request by **Monday, March 31, 2008**.

## II. Motion for Additional Peremptory Challenges

Defendant Gabriel Martinez has filed a Motion for Additional Peremptory Challenges (Doc. #805). The United States has filed a brief in opposition (Doc. #838).

The Court does not intend to make a formal ruling on this motion until shortly before the trial date, when it will be clear how many defendants are still set for trial. However, the Court has made a preliminary determination regarding how it intends to divide the peremptory challenges at trial. The Court provides the following explanation for informational purposes only, and the parties are free to argue before trial that peremptory challenges should be divided differently.

The defendants will begin with 10 peremptory challenges, and the United States will begin with 6 peremptory challenges. The defendants' 10 peremptory challenges will be divided by the total number of defendants set for trial. For example, if there are 8 defendants, each defendant would get 1 peremptory challenge out of the 10. The Court will then give the defendants additional peremptory challenges, so that each defendant has a minimum of 3 challenges to use individually. The Court intends to retain the 10-to-6 proportion of peremptory challenges for the United States. Therefore, the Court will give the United States an increased number of peremptory challenges, which will be 60% of the total number of peremptory challenges which are provided to all the defendants collectively.

## III. Motion for Immediate Production of Jencks/Rule 26.2 Statements

Defendant Gabriel Martinez has filed a motion requesting that the United States be ordered to provide all Jencks Act and Rule 26.2 statements immediately and on a continuing basis (Doc.

#795).  Defendant further requests that the United States be required to produce all statements of persons interviewed who may not be called as Government witnesses at trial, as well as all notes made by law enforcement officers and investigators in this case.

The United States has filed a brief in opposition (Doc. #818).  The United States responds that it has already provided the witness statements required under the Jencks Act and Rule 26.2, and that it will provide grand jury transcripts pursuant to the previous order of the Court.  As to Defendant's request for the notes of investigators, the United States responds that it is not aware of the existence of any notes, and that the notes are irrelevant in any event because nearly all interviews have been recorded.

The Court first considers Defendant's request for the notes of law enforcement officers from any witness statements or interviews.  The Jencks Act does not require police officers to retain their original investigative notes.  United States v. Kuykendall, 633 F.3d 118, 119 (8th Cir. 1980).  Law enforcement officers have no duty to retain their rough, handwritten notes after the contents have been incorporated into formal reports, if the reports are checked for accuracy and the notes were destroyed in good faith.  United States v. Williams, 604 F.2d 1102, 1116-17 (8th Cir. 1979).  Therefore, as to any notes which have already been destroyed, Defendant's motion is **MOOT**.

As to any notes which have not been destroyed, the Court hereby **ORDERS** that the United States shall inspect the notes and compare them to the relevant typewritten reports.  If a material discrepancy exists between any set of notes and its corresponding report, the Court **ORDERS** that the notes shall be produced for *in camera* review to determine whether they are discoverable under the Jencks Act and Rule 26.2.

Other than any rough notes which may be appropriate for disclosure, it appears to the Court that the United States has already complied with the disclosure requirements of the Jencks Act and Rule 26.2. Jencks and Rule 26.2 apply only to statements of witnesses and prospective witnesses at trial, so Defendant's request for statements of those interviewed who may not be called as witnesses at trial is **DENIED**.

The Court also notes that the United States has a continuing obligation to disclose all Jencks Act and Rule 26.2 statements to the defense. The Court hereby **ORDERS** that the United States shall continue to provide the defendants with all Jencks Act and Rule 26.2 statements as necessary.

### IV. Motion for Bill of Particulars

Defendant Gabriel Martinez has filed a Motion for a Bill of Particulars (Doc. #803). The United States has filed a brief in opposition (Doc. #819).

Defendant argues that a bill of particulars is necessary to enable him to prepare a defense against the charges made in the Fourth Superseding Indictment,[1] specifically Counts One, Ten, Fifteen, and Sixteen. Defendant states that he needs a bill of particulars because of the difficulties he has encountered in reviewing the voluminous discovery materials in this case. Defendant requests that the United States be required to provide highly detailed information in the bill of particulars, including the dates, locations, amounts of controlled substances, means of communication, and specific activity and specific individuals involved in those four counts against him.

---

[1] The Court notes that one day after Defendant filed this motion, the indictment was superseded again. Therefore, the indictment presently charging Defendant is actually the Fifth Superseding Indictment. The charges against Defendant were not materially changed from the Fourth Superseding Indictment to the Fifth Superseding Indictment. The only difference noted by the Court is the addition of another co-defendant to the drug conspiracy charge in Count One. Because Defendant's motion applies with equal force to the Fifth Superseding Indictment, the Court's analysis will focus on the Fifth Superseding Indictment.

The primary purpose of a bill of particulars is to inform the defendant of the nature of the charges against him with sufficient precision to enable him to prepare for trial, thus preventing or minimizing the element of surprise at trial.  See United States v. Hernandez, 299 F.3d 984, 990-91 (8th Cir. 2002); United States v. Wessels, 12 F.3d 746, 750 (8th Cir. 1993).  A bill of particulars also enables the defendant to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment is too vague and indefinite.  Hernandez, 299 F.3d at 990-91.  However, a bill of particulars is not to be used for discovery purposes to provide detailed disclosure of the government's evidence at trial.  See Wessels, 12 F.3d at 750; United States v. Hester, 917 F.2d 1083, 1084 (8th Cir. 1990).

Defendant requests a bill of particulars on Counts One, Ten, Fifteen, and Sixteen.  Count One charges him with Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances in violation of 21 U.S.C. § 846.  The Court finds that Count One already contains much information about the charged conspiracy.  Count One alleges the conspiracy occurred from January 1, 2002, until the date of the Indictment, and that it occurred in the states of North Dakota, Minnesota, Nebraska, Washington, and California.  Count One further alleges the conspiracy involved the distribution of more than 500 grams of methamphetamine, more than 500 grams of cocaine, and marijuana, and that in excess of 30,000 grams of methamphetamine were distributed in North Dakota and Minnesota by members of the conspiracy.  Count One further states that drugs were transferred from Mexico, Washington, California, and elsewhere to the Red River Valley area for distribution.  Count One also contains a list of 27 other named co-conspirators.

Count Ten charges Defendant with Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1).  Count Ten specifically alleges that in May 2005,

in the District of North Dakota, Defendant knowingly possessed with intent to distribute about 5 pounds of methamphetamine, along with co-defendant Jorge Arandas.

Count Fifteen charges Defendant with Death Caused by Use of a Firearm During a Crime of Violence in violation of 18 U.S.C. §§ 924(j)(1) and 2. Count Fifteen specifically alleges that on June 30, 2005, in North Dakota and Minnesota, Defendant aided, abetted, and caused the death of Lee Avila during and in relation to drug trafficking crimes and crimes of violence, as alleged in Counts One and Sixteen. Count Fifteen further states that the act was murder as defined in 18 U.S.C. § 1111, because Lee Avila was shot and killed with a firearm willfully, deliberately, maliciously, and with premeditation. Count Fifteen charges three other named co-defendants with committing this crime.

Count Sixteen charges Defendant with Murder in Furtherance of a Continuing Criminal Enterprise in violation of 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 2. Count Sixteen alleges that on June 30, 2005, in North Dakota and Minnesota, Defendant and co-defendant Jorge Arandas caused the intentional killing of Lee Avila while working in furtherance of a continuing criminal enterprise, as charged in Count Fourteen, and while engaged in a controlled substance offense, as charged in Count One.

After reviewing Counts One, Ten, Fifteen, and Sixteen of the Fifth Superseding Indictment, the Court comes away with a clear picture of the charges against Defendant and the alleged acts involved in those charges. The Court finds that Defendant has been informed of the nature of the charges against him with sufficient particularity to enable him to prepare for trial. Therefore, a bill of a particulars is unnecessary. The Court has sympathy for defense counsel in this case, as there has been voluminous discovery to review. However, Defendant's request for highly detailed

disclosures about the evidence against him is an impermissible attempt to use a bill of particulars as a discovery tool. For the foregoing reasons, Defendant's Motion for Bill of Particulars is **DENIED**.

### V. Motion to Dismiss Indictment, or in the Alternative, Motion to Stay Proceedings for Failure to Comply with the Jury Selection and Service Act of 1968 and the Sixth Amendment to the United States Constitution

Defendant Gabriel Martinez has filed a Motion to Dismiss the Indictment for Failure to Comply with the Jury Selection and Service Act of 1968 ("JSSA") and the Sixth Amendment (Doc. #807). The United States has filed a brief in opposition (Doc. #840).

Defendant argues the District of North Dakota's jury selection plan violates both the JSSA and his Sixth Amendment right to be tried by a jury made up of a fair cross-section of the community. The Eighth Circuit analyses the JSSA and the Sixth Amendment's fair cross-section requirement under identical legal standards. United States v. Sanchez, 156 F.3d 875, 879 n.3 (8th Cir. 1998). To prevail on this claim, Defendant must prove: (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process. Duren v. Missouri, 439 U.S. 356, 364 (1979).

For the first prong, Defendant has selected Hispanics and African-Americans. Since there is no dispute that either of these groups represents a "distinctive" group in the community, the first prong is satisfied.

For the second prong, Defendant has provided census statistics which indicate that Hispanics comprise 0.8% of the population in the counties of the Southeastern Division of North Dakota, but

only 33% of Hispanics voted in all of North Dakota in the last election. Applying this statewide percentage to the counties of the Southeastern Division, Hispanics would constitute approximately 0.3% of the possible jury pool, compared to constituting approximately 0.8% of the general population.

As to African-Americans, Defendant again provides census statistics indicating that they comprise approximately 0.5% of the population in the counties of the Southeastern Division of North Dakota. Only 33% of African-Americans in all of North Dakota voted in the last election. Again applying this statewide percentage to the counties of the Southeastern Division, African-Americans would constitute approximately 0.2% of the possible jury pool, compared to constituting approximately 0.5% of the general population.

In Duren, the Court found that a 72% discrepancy between the percentage of women in the general population versus the percentage of women in the jury venire was sufficient to satisfy this prong of the analysis. See 439 U.S. at 365-66 (stating that the difference between 53% of women in the general population and 15% of women in the jury venire was a "gross discrepancy"). In this case, there would be a 63% discrepancy for Hispanics and a 60% discrepancy for African-Americans. Assuming the accuracy of Defendant's numbers, while the discrepancy is not as high as it was in Duren, it is likely these statistics would satisfy the second prong of the analysis. However, the United States does not stipulate to the accuracy of these numbers. The Court need not resolve this dispute because Defendant has failed to establish the third prong of this inquiry.

For the third prong, Defendant must demonstrate that the under-representation is due to systematic exclusion of the group in the jury selection process. Duren, 439 U.S. at 364. "The mere fact that one identifiable group of individuals votes in a lower proportion than the rest of the

population does not make a jury selection system illegal or unconstitutional." United States v. Clifford, 640 F.2d 150, 156 (8th Cir. 1981).

In Duren, the jury questionnaire allowed women to be excused from service simply if they requested to be excused. 439 U.S. at 361. Men did not have the same option. In addition, if women did not return their jury summons, they were treated as if they requested to be excused if they did not appear for jury service on the appointed day. Id. at 362. Men also did not have this same option. Under these circumstances, the Court held that the under-representation of women in the jury venire was due to their systematic exclusion in the jury selection process. Id. at 366-67.

In this case, Defendant has failed to produce any evidence of systematic exclusion. Instead, he simply cites back to his statistical data from the second prong, thereby conflating the second and third prongs, which would render the third prong meaningless. Under Defendant's reasoning, all one would have to show to allege a violation of the JSSA and the Sixth Amendment is a significant under-representation in the jury venire. However, the Supreme Court and the Eighth Circuit require more. Id.; United States v. Morin, 338 F.3d 838, 844 (8th Cir. 2003).

Since North Dakota uses voting lists for jury selection, Defendant must show that Hispanics or African-Americans face obstacles to voting in presidential elections. Morin, 338 F.3d at 844. Defendant has not offered any evidence that these groups face obstacles to voting. Since Defendant has failed to establish that Hispanics or African-Americans are systematically excluded from jury pools in the District of North Dakota, the use of voter lists for jury selection does not violate the JSSA or the Sixth Amendment. United States v. Greatwalker, 356 F.3d 908, 911 (8th Cir. 2004); Morin, 338 F.3d at 844.

Defendant's Motion to Dismiss the Indictment, or in the Alternative, to Stay the Proceedings for Failure to Comply with the Jury Selection and Service Act of 1968 and the Sixth Amendment is **DENIED**.

### VI.  Motion to Sever Co-Defendant Alan Wessels

Defendant Gabriel Martinez has filed a Motion to Sever Co-Defendant Alan Wessels (Doc. #788).  Defendant argues that Alan Wessels should be severed from the trial because Wessels has made statements to the authorities which may be admissible at trial, and Wessels has the right not to testify so he cannot be cross-examined about those statements.  In his motion, Defendant cites to Bruton v. United States, 391 U.S. 123 (1968), and Crawford v. Washington, 541 U.S. 36 (2004).

The United States has filed a brief in opposition (Doc. #821).  The United States responds that it will not be introducing any statements made by Wessels which directly implicate Gabriel Martinez, and that Defendant has not even pointed to any such statements made by Wessels.  The United States argues there will be no Bruton violation.  The United States further contends that Defendant will not be prejudiced by a joint trial.

At the pretrial motions hearing on January 31, 2008, the United States informed the Court that it intends to introduce statements made by Alan Wessels, but that it will not introduce any statements which implicate nontestifying co-defendants. Based on the representations of the United States about the nature of the statements it intends to introduce at trial, the Court finds there is no Bruton issue.  See United States v. High Elk, 442 F.3d 622, 625 (8th Cir. 2006) ("Bruton is grounded on the Sixth Amendment right to confrontation and prohibits the admission of an out-of-court confession by a nontestifying defendant implicating a co-defendant by name in the crime.") Defendant's Motion to Sever Co-Defendant Alan Wessels is **DENIED**.

## VII. Motion to Dismiss Because of Pre-Accusatory Delay

Defendant Ramon Martinez has filed a Motion to Dismiss Because of Pre-Accusatory Delay in Case No. 3:06-cr-45 (Doc. #81). Defendant argues the drug conspiracy charge should be dismissed under Rule 48(b), Fed. R. Crim. P., because he was not indicted until long after his alleged involvement in the drug conspiracy ended. The United States has filed a brief in opposition (Doc. #90).

Rule 48(b), Fed. R. Crim. P. provides, "The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." The United States Supreme Court has held that Rule 48(b) "clearly is limited to post-arrest situations." United States v. Garner, 32 F.3d 1305, 1310 (8th Cir. 1994) (citing United States v. Marion, 404 U.S. 307, 319 (1971)).

In Case No. 3:06-cr-45, the Indictment against Defendant Ramon Martinez was filed on April 26, 2006, charging him with Conspiracy to Possess with Intent to Distribute and Distribute Controlled Substances in violation of 21 U.S.C. § 846. The Court issued a warrant for his arrest on that charge on April 28, 2006. Defendant was arrested in Texas on October 27, 2006.

Based on these facts, the Court finds that Defendant is not entitled to dismissal of the Indictment under Rule 48(b). The charge against him was presented to the grand jury approximately six months before he was arrested. It appears to the Court that Rule 48(b) simply does not apply to the circumstances of this case, where the Indictment was the first formal act in the criminal prosecution of Defendant. See Marion, 404 U.S. at 312 n.4. Defendant's Motion to Dismiss Because of Pre-Accusatory Delay under Fed. R. Crim. P. 48(b) is **DENIED**.

### VIII. Motion to Redact

Defendant Ramon Martinez has filed a Motion to Redact certain references to himself in any documents to be introduced at trial (Docs. #814, #84). In particular, Defendant requests that the United States be required to redact headings from any documents referring to this case as the "Ramon Martinez case" or "Ramon Martinez et al." The United States responds that it does not intend to offer any of these documents as evidence at trial, so the motion is moot (Docs. #842, #88).

The Court concludes that some redaction would be appropriate not only as to Ramon Martinez, but as to all defendants in this matter. The Court hereby **ORDERS** that no exhibit shall be offered at trial which contains a heading identifying any of the defendants as a shorthand name for the case generally, such as the "Martinez case" or the "Arandas case." If the United States intends to offer any documents with such a general heading at trial, the heading must be redacted. However, if the heading of a document refers to a particular defendant, and the document itself specifically relates to that defendant, redaction is not required.

### IX. Continuance Issues Due to Production of Additional Discovery

At the hearing on January 31, 2008, counsel for Defendant Ramon Martinez raised the issue of continuing discovery disclosures. Counsel stated that he had already brought one motion to continue because of discovery issues, and that he anticipated the issue would arise again prior to trial. The United States informed the Court that a fair amount of discovery will continue to be produced in this case.

In order to alleviate some of the difficulties with transmitting discovery to the defendants in this matter, the Court hereby **ORDERS** that any discovery produced after **Monday, March 24,**

13

**2008**, must be provided in paper format.  The United States has indicated to the Court that it intends to produce discovery after that date in both paper and disk format.

**IT IS SO ORDERED.**

Dated this 12th day of February, 2008.

    /s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court